FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID N.,[1] | No.  2:24-cv-311-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| LELAND DUDEK, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff David N. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to anxiety disorder, personality disorder, depressive disorder, post-traumatic stress disorder (PTSD), chronic obstructive pulmonary disease (COPD), cervical degenerative disc

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

disease, lumbar degenerative disc disease, degenerative joint disease of the right hand, and bilateral shoulder impingement. Because the ALJ's evaluation of the medical opinions pertaining to Plaintiff's physical impairments is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

Claiming an inability to work due to the physical and mental impairments noted above Plaintiff applied for benefits under Title 16, with an alleged onset date of December 19, 2020.[2]

After the agency denied benefits at the initial and reconsideration stages,[3] ALJ Jesse Shumway held a telephone hearing in September 2023, at which Plaintiff and a vocational expert testified.[4]  Plaintiff testified that his back pain worsened after April 2021.[5] He said that the pain starts in the middle of his back and goes down into his leg and

[2] AR 256-261, 276.

[3] AR 151-155, 164-166.

[4] AR 69-98.

[5] AR 73.

that the day prior when he got up, his foot dragged behind him, and that it varies from day to day which leg has worse pain.[6] He said that he can stand in once place for 15 minutes but that if he shifts his weight and moves around he could stand for 60 to 90 minutes, and that afterward he would need to lay down and take pain medication.[7] He said that when he goes to a doctor's appointment he has to lay down when he gets home because it is too much walking, standing, and sitting.[8] He said after going to the doctor he has to take a pain pill and a muscle relaxer and that the pills make him drowsy and unable to concentrate.[9] He said that he would at times fall asleep and that he spent most of the day sitting or lying down.[10]

---

[6] *Id.*

[7] AR 73-74.

[8] AR 74.

[9] AR 74-75.

[10] AR 75.

Plaintiff said that he lies down 2 to 3 times a day and that he will lie down for 30 minutes to 2 hours.[11] He said that he has a bicycle that he rides to help with the range of motion on his knees but he has to arch his back a certain way to ride it.[12] He said that he can carry anywhere from a gallon to a half gallon of milk and that he has to make multiple trips to bring groceries into the house.[13] He is right-handed and has problems with his trigger finger and middle finger and shoulder and has problems lifting his arm above his head or carrying objects.[14] Reaching in front of him causes pinching in his shoulder and holding a pen is difficult.[15] He said that he was using his left hand more but that because insurance denied the surgery to repair the

---

[11] AR 76.

[12] *Id.*

[13] AR 76-77.

[14] AR 77.

[15] AR 78.

shoulder he is losing muscle bulk.[16] He said that a specialist told him the problem was caused by his neck.[17]

Plaintiff said he tried to do creative welding as part of his mental health therapy but it was too stressful physically even though the equipment only weighed 12-15 pounds.[18] He said that he let someone use his car 3 times to take scrap to sell and was paid $50 each time.[19] Plaintiff also testified that since his bicycle accident his life-long migraine headaches worsened.[20] He said he has headaches daily and that he now has migraines three days a week that last for 2 to 3 hours.[21] He said that stress and tension are triggers and that the headaches are relieved by oxycodone.[22] He said that he has issues with

---

[16] AR 79.

[17] *Id.*

[18] AR 79-80.

[19] AR 81.

[20] AR 81-82.

[21] AR 82.

[22] AR 83.

sleep as well but that he takes CBD gummies to be able to sleep.[23] He said that since 2021 he has not been able to go camping, fishing, or hunting.[24] He said that he is manic for two weeks a month on average.[25] When he is manic he won't bathe, will isolate, and will not go to appointments.[26]

Plaintiff said he has missed medical appointments because of his "manic episodes" and has also missed an appointment with Social Security.[27] He has also forgotten appointments because of issues with his memory.[28] He said that when he is in pain he gets depressed and that he gets anxiety in crowds.[29] Plaintiff testified that he has anxiety

---

[23] AR 83-84.

[24] AR 84-85.

[25] AR 85.

[26] AR 85-86.

[27] AR 86.

[28] AR 86-87.

[29] AR 87.

attacks and at times will scream during the attacks.[30] He said he has a hard time getting used to doctors and trusting them.[31] Plaintiff said he has insurance and can get treatment but was denied a surgery to repair his rotator cuff.[32] He can't use that arm as a result and has atrophy in his upper arm muscles.[33]

The ALJ issued a decision denying benefits.[34] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and his activities.[35] As to the medical opinions, the ALJ found:

---

[30] AR 88.

[31] AR 88-89.

[32] AR 89-90.

[33] AR 90.

[34] AR 14-37. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[35] AR 24-27.

- The reviewing opinions of Robert Stuart, MD; Jeffery Merrill, MD; Beth Fitterer[36]; and John Gilbert, PhD to be largely persuasive.

- The treating opinion of Jennifer Burst, ARNP, to be persuasive.

- The examining opinions of David Morgan, PhD, and Heidi Tate, PA-C; and the treating opinions of Teresa Rae, LMHCA, and April Biggs, MD, to be not persuasive[37]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff has not engaged in substantial gainful activity since April 19, 2021, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: personality disorder, anxiety disorder, depressive disorder, post-traumatic stress disorder,

---

[36] The record does not identify Beth Fitterer's degree but lists her name after "MC/PC Signature" and identifies "Medical Specialty Code: 38 Psychology." AR 132.

[37] AR 27-30.

polysubstance dependence, chronic obstructive pulmonary disease, cervical degenerative disc disease, lumbar degenerative disc disease, degenerative joint disease of the right hand, and bilateral shoulder impingement.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff has the RFC to perform less than the full range of sedentary work in that:

  > [He] can never crawl or climb ladders, ropes, or scaffolds; he can occasionally stoop and climb stairs and ramps, and can frequently perform all other postural activities; he can occasionally reach overhead; he can frequently handle with the right upper extremity; he cannot have concentrated exposure to extreme cold, humidity, or pulmonary irritants; he can have no exposure to extreme heat or hazards (e.g., unprotected heights, moving mechanical parts); he is limited to simple, routine, repetitive tasks; he cannot work at an assembly-line pace or do similarly fastpaced work; he can have only occasional, superficial interaction with the public and coworkers; and he needs a routine, predictable work environment with clear, employer-set goals and no more than occasional changes.

- Step four: Plaintiff has no past relevant work.

- Step five: Plaintiff is capable of performing work as a table benchworker, a taper, and a document sorter.[38]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council.[39] Plaintiff timely requested that this Court review the denial of disability.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[40] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[38] AR 19-31.

[39] AR 252, 1–6.

[40] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41]

## III.  Analysis

Plaintiff argues the ALJ erred when evaluating the opinions of consultative examiners Dr. Morgan and PA-C Tate, as well as treating source Dr. Biggs; erred in rejecting Plaintiff's subjective complaints; and erred at step five as a result of the errors alleged.[42] The Commissioner argues the ALJ's findings regarding the medical opinion evidence and Plaintiff's subjective claims are supported by substantial

---

[41] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[42] ECF No. 11.

evidence, and that Plaintiff's claim of error at step five is meritless as it depended on prevailing on his prior claims.[43] As is explained below, the ALJ erred when evaluating the medical opinions, particularly the opinion of Dr. Biggs; on remand, the ALJ is to reevaluate the medical opinions and testimony, develop the record as needed, and properly consider Plaintiff's combined impairments.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency the opinions of Dr. Biggs, Dr. Morgan, and PA-C Tate.  The Commissioner argues the ALJ reasonably articulated his reasoning as to the supportability and consistency of the medical opinions as is required by the new regulations and found them not persuasive.  After considering each of the medical opinions and the reasons for their issuance, the Court determines the ALJ's evaluation of the medical opinion of Dr. Biggs is not supported by substantial evidence.

---

[43] ECF No. 12.

1.   <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[44] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[45] Supportability and consistency are the most important factors.[46] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[47]

The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations

---

[44] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[45] 20 C.F.R. § 416.920c(c)(1)–(5).

[46] *Id.* § 416.920c(b)(2).

[47] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[48]

2.  Dr. Biggs' Opinion

On September 11, 2023, April Biggs, MD, completed a three-page form.[49]  The form contained several check-boxes but primarily requested relevant information and required the completing medical source to fill in answers with narrative language.[50]

Dr. Biggs indicated that she had first treated Plaintiff on January 19, 2018, and last saw him August 15, 2023.[51] She wrote that Plaintiff suffered from cervical and lumbar disc disease and arthritis,

---

[48] 20 C.F.R. § 416.920c(c)(1)–(2).

[49] AR 1004-1006.

[50] *Id*.

[51] AR 1004.

osteoarthritis in the knees, anxiety disorder, depression with a history of suicide attempts, TBI with lifelong deficits, COPD, personality disorder, rotator cuff injury left arm, and ADHD.[52] She wrote that Plaintiff suffered from pain in his neck, back, shoulders, arms, and legs; paresthesia in the arms; loss of fine motor skills in the hands and fingers; and crippling anxiety.[53] Dr. Biggs stated that the conditions and symptoms were supported by examination findings as well as multiple imaging scans, and that Plaintiff had been treated with physical therapy, occupational therapy, physiatry, injections, psychiatrists, neurologists, and multiple medications; that Plaintiff's medications were sedating and lowered his reaction times and impaired cognitive abilities, and that he had a poor prognosis.[54] She also opined that Plaintiff would need to lie down for 30 minutes every two hours due to pain and fatigue.[55]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

1

2        When asked if work would cause Plaintiff's condition to

3    deteriorate, Dr. Biggs wrote that given Plaintiff's limited fund of

4    knowledge and mental impairments he could likely only find manual

5    labor that would cause rapid deterioration of his musculoskeletal

6    condition.[56] She opined that Plaintiff would likely miss 4 days of work a

7    month due to the conditions stated above, that he was unable to meet

8    even the demands of sedentary work, that he would be limited to

9    occasional use of his arms and hands bilaterally for reaching, handling,

10   and fingering, and that he would be expected to be off task for over 30%

11   of a workday.[57] Dr. Biggs wrote that she had treated Plaintiff for the

12   last 2.5 years and that given his particular cognitive, mental, and

13   physical challenges she did not feel he was capable of working.[58]

14       The ALJ found the opinion of Dr. Biggs to be not persuasive.  He

15   articulated the following reasoning in support of his assignment of no

16   persuasiveness:

17

18

19   _____

20   [56] AR 1005.

21   [57] AR 1005-1006.

22   [58] AR 1006.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

I do not find Dr. Biggs' opinion to be persuasive. It is a checkbox form with little meaningful explanation for the ratings. The treatment notes from this provider do document some findings that would support some of these limitations but given the extraordinary similarities across this provider's physical exams, it appears likely they are copied and pasted from note to note and do not actually represent consistent exam findings, such as appearing uncomfortable and chronically ill, antalgic gait, flat affect/restricted, and mild psychomotor agitation (Ex B14F-5, B14F-14, B14F-20, B20F-6, B20F-16, B20F-24, B20F-31, B20F-40, B20F-48, B20F-54, B20F-62). This suspicion is likewise raised by the fact that most of this provider's abnormal findings are contradicted by exams performed by other medical professionals. These limitations certainly are not consistent with the longitudinal record. Some make no sense at all; for example, the notion that the claimant is as limited in using his left upper extremity as his right is absurd because the claimant has no documented impairment in his left hand, only his right; his bilateral shoulder impingement would affect reaching, but not handling or fingering (and are not documented to be nearly as limiting as opined here). Moreover, the conclusory assertions that the claimant will miss 4+ days of work per month and be off task 30% are really nothing more than statements that the claimant cannot work at times, which address an issue reserved to the commissioner, and thus are inherently not valuable or persuasive. Likewise, the assertion that claimant is "severely limited, unable to perform the demands of even sedentary work" addresses an issue reserved to the commissioner. Stripping away the nonsensical opinion regarding upper extremity limitations and the conclusory assertions that address an issue

reserved to the commissioner, there really is no specific opinion left in this form.[59]

The ALJ has articulated five reasons for discounting Dr. Biggs's opinion: that the opinion was rendered on a check-box form that gave little to no explanation, that Dr. Biggs' treatment notes are identical and likely copy and pasted, that the limitations are not consistent with the longitudinal record, that Dr. Biggs's opinion that Plaintiff is as limited in the use of his left arm as his right is nonsensical, and that Dr. Biggs' opinion that Plaintiff would be off task 30% of the time, would miss 4 or more days of work a month and was not capable of performing the demands of sedentary work are issues reserved to the Commissioner.[60] The Court will address each in turn.

a.  _That Dr. Biggs' opinions regarding absences and being off-task are issues reserved to the Commissioner_

The ultimate determination of whether a Plaintiff is disabled is an issue reserved to the Commissioner.  In reaching that conclusion an

---

[59] AR 30.

[60] _Id_.

ALJ must consider the medical opinions provided and articulate his consideration of them.[61] A medical opinion is defined as "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations."[62]

Dr. Biggs' opinions that Plaintiff would be off-task for 30% of the day, absent at least 4 times a month, and unable to life ten pounds frequently or sit for up to two hours are clearly medical opinions and not a conclusory statement of disability reserved to the Commissioner. The Commissioner has not attempted to refute that point in his brief.[63]

> b.    *That Dr. Biggs' opinion was rendered on a check-box form that gave little to no explanation*

As the Court noted above, the three-page form completed by Dr. Biggs contains several check boxes on the second page.  But the form cannot be characterized as a "check-box form."  The majority of

---

[61] 20 C.F.R. § 416.920c.

[62] 20 C.F.R. § 416.913(a)(2).

[63] ECF No. 12.

the information contained on the form are the hand-written narrative explanations given by Dr. Biggs.[64] Dr. Biggs explained that the basis of her opinions was physical examination findings, as well as the imaging results of multiple CT scans, MRIs, and X-Rays.[65]  She also explained that Plaintiff had been treated with medications that had side effects which would affect his cognitive abilities and pace.[66]

The Court concludes that the ALJ erred in mischaracterizing the report.

c.    *That Dr. Biggs' examination notes were copy and pasted*

Without any articulated basis, the ALJ stated that there are "extraordinary similarities" in the examination findings and asserts that this supports a finding they are copy and pasted.[67]

---

[64] AR 1004-1006.

[65] AR 1004.

[66] AR 1005.

[67] AR 30.

The Court notes that it would be expected that a patient who suffered from a long-term chronic condition would have a standard baseline from which his condition would likely fluctuate.  Having reviewed the treatment records, the Court concludes that they do contain similarities but also contain enough differences and irregularities to dispel any assertion that they are copy and pasted and do not provide for specific contemporaneous findings made by Dr. Biggs on the day they were written.

For example, the Court cites to Plaintiff's office visits on June 27, 2022; December 19, 2022; April 10, 2023; May 10, 2023; and May 23, 2023.[68]  There are notable differences in the vital signs section of each report with weight ranging from 159 pounds to 164 pounds, and oxygen saturation rates ranging from 95% to 99%.[69] At his June 27, 2022; December 19, 2022; and April 10, 2023 office visits, Plaintiff had elevated pulse rate and blood pressure.[70] There was in each case a

---

[68] AR 978-985, 962-970, 954-961, 946-953, 936-945.

[69] AR 980, 964, 956, 948, 936.

[70] AR 980, 964, 956.

corresponding note in the physical examination that Plaintiff's heart was "slightly tachycardic."[71] At office visits on May 10, 2023, and May 24, 2023, Plaintiff's blood pressure and heart rate were in the normal limit and the physical examination noted a normal heart rate.[72]

On June 27, 2022, Dr. Biggs notes in her examination findings that "Decreased ROM d/t pain neck/back. Decreased ROM right wrist. Mallet finger--3rd right hand. Left UE/biceps with decreased bulk compared to right. Tender to palpation left lower rib border in posterior axillary line. No step-offs, irregularities but could not palpate well d/t discomfort."[73] This finding is not present in any of the other records.

On May 10, 2023, Dr. Biggs found the following on examination: "Scars to left nose/bridge of nose and right frontotemporal area form prior facial trauma. Has resolving abrasion to just above right brow laterally where was hit in head with piece of wood recently. Healing

---

[71] AR 959-960, 966, 983.

[72] AR 948, 951-952, 937-938, 940-941.

[73] AR 983.

well with no sign of infection."[74]  This finding is not present in the examination findings of any other day.

The Court concludes that there are similarities in the examination findings, but that there are also findings specific to and consistent with the other reported treatment notes from the days made which evidence that the examination findings were made contemporaneously and not copied and pasted from a prior date.

> d.    *That Dr. Biggs' opinion is inconsistent with the longitudinal record*

Here, the ALJ made one simple conclusory statement that "These limitations certainly are not consistent with the longitudinal record."[75] This is a conclusory statement and not a proper finding, as the ALJ has failed to identify any record with which the opinion is inconsistent.  It cannot be considered a reasonable basis to discredit Dr. Biggs' expert opinion.

---

[74] AR 952.

[75] AR 30.

Moreover, the record contains a great deal of medical evidence both in the form of treatment notes and objective testing that supports Dr. Biggs' opinion.

On December 15, 2019, appeared at Dayton General Hospital ER for the third time in 3 days complaining of migraine headache.[76] Also noted was a history of back pain with right leg paresthesia.[77] Noted to be in mild distress.[78]

An October 22, 2020, visit with ARNP Burnett notes back pain with numbness down right thigh.[79]  On February 16, 2021, Plaintiff presented to physiatry with complaints that his left shoulder pain was worsening, with a sensation of pins and needles going into his arm and hand.[80] It was notes that Plaintiff's back and neck pain had increased

---

[76] AR 396.

[77] AR 397.

[78] *Id.*

[79] AR 405.

[80] AR 623.

and that he was "struggling with managing pain."[81]  March 16, 2021, visit to ARNP Burnett noting that physiatry had recommended an MRI, which was denied by insurance and Plaintiff was requesting referral for right shoulder pain and medication for asthma.[82] Wheezing on expiration and depressed affect noted on examination.[83]

On June 21, 2021, Plaintiff presented to RN Melissa Nesje for physical for DSHS.[84] She noted complaints of pain in the right hand, right shoulder, knees, and neck.[85] On examination, Plaintiff had decreased ROM in the spine and poor balance.[86]

On June 23, 2021, an MRI of the lumbar spine without contrast indicted disc disease at L4-5, which results in moderate to severe left and moderate right neural foraminal narrowing, an annular tear in the

---

[81] AR 626.

[82] AR 399.

[83] AR 401-402.

[84] AR 429.

[85] *Id.*

[86] AR 434.

L4-5 disc in the left far lateral region, and mild narrowing of the neural foramen at the L5-S1 level.[87]

On July 21, 2021, an MRI of the spine indicated limitation with flexion or extension. Vertebrae: No fractures or evidence of acute vertebral deformity. Lumbar Disc Levels: Slight disc height loss at L4-5. Small multilevel disc osteophyte formation. Facets and Posterior Spinal Elements: Mild facet arthrosis at L4-5 and L5-S1.[88]  Imaging of the chest without contrast indicated diffuse mild central lobular emphysema.[89]

On July 22, 2021, physiatry notes indicate that Plaintiff had been advised to undergo a hemi-laminectomy at L3-4 and L4-5, and was currently limited in his ability to carry, move, and handle objects.[90] Decreased stability and upright posture was noted as well.[91]

---

[87] AR 551-552.

[88] AR 1022.

[89] AR 548-549.

[90] AR 621.

[91] AR 622.

Those treatment records and the objective imaging results which Dr. Biggs cited to in her opinion are supportive of and consistent with Dr. Biggs' opined limitation. For this reason, the Court concludes the ALJ's finding that Dr. Biggs' opinion was inconsistent with the record cannot serve as good cause to discredit Dr. Biggs' opinion.

           e.       *<u>Dr. Biggs' opinions regarding limitations in the use of upper extremities is unsupported by the record</u>*

The Court takes exception to the fact that the ALJ would characterize Dr. Biggs' opinions as "absurd." There is nothing in the record that indicated that Dr. Biggs was unprofessional or inappropriate, and as noted above she cited to objective testing in support of her opined limitations.

Plaintiff asserts that the ALJ erred in stating that Dr. Biggs erred in giving Plaintiff the same limitations in both her left and right arm and hands because her right arm and hand injury is worse. The Court agrees with Plaintiff that Dr. Biggs did not state that Plaintiff's function in her left and right arm are identical, but only stated that she would be limited to occasional use of her arms and hands bilaterally.

It is not disputed that Plaintiff has a bilateral shoulder impingement. The ALJ found Plaintiff's bilateral shoulder impingement syndrome to be a severe impairment.[92]

On July 13, 2021, Michael Priddy, MD noted pain, decreased range of motion of the right shoulder and a diagnosis of impingement syndrome of the right shoulder.[93] It was noted by Dr. Priddy on examination that Plaintiff was unable to tolerate resistance for the right shoulder and had a positive Neer test and Hawkins tests.[94] On July 19, 2021, Plaintiff continued to complain of numbness in his right leg and numbness and pain in his left leg.[95] On examination, physiatrists reported "clicking" and catching in the right shoulder.[96]

Additionally, there is no question that Plaintiff suffers from impairment in his right hand. On November 15, 2021, Plaintiff

---

[92] AR 19-20.

[93] AR 612.

[94] AR 616.

[95] AR 619.

[96] AR 620.

underwent an MRI of the right wrist with dye, due to continued right hand and wrist pain, decreased ROM and grip strength following fracture in May 2021.[97] The MRI indicated: 1. Findings consistent with ulnar impaction syndrome, as described. 2. Thinning and central perforation of the triangular fibrocartilage complex. 3. Diffuse abnormal signal in the dorsal radioulnar ligament suggesting an insufficiency. 4. Suspect partial tearing of the volar component of the scapholunate ligament. 5. Probable disruption of the smaller volar ulnolunate and lunotriquetral ligaments. 6. Ganglion cysts on the volar surface of the radius at the level of the radiocarpal joint and extending slightly proximally. 7. Healing fracture of the dorsal base of the 3rd metacarpal.[98]

While the ALJ limited Plaintiff to no reaching above his head,[99] he failed to account for the limitation in shoulder impingement to lifting at the shoulder level, as well as abduction and adduction. To the

-------------------

[97] AR 1017-1018.

[98] AR 1017.

[99] AR 22.

extent that internal and external rotation of the arm are necessary for fingering, this is error.  The error is consequential because the three jobs identified by the VE require frequent use of hands for fine fingering.[100]

The Court concludes that the ALJ's consideration of the supportability factor of Dr. Biggs' opinion was flawed and the consideration of the consistency factor consisted of one conclusory sentence that lacked any specificity or citation to a single record. A remand is warranted for the ALJ to properly evaluate Dr. Biggs' opinions with due consideration of both the supportability and consistency factors.

3.    Dr. Morgan's and PA-C Tate's Opinions

Because the Court has found that remand is warranted, it will address this issue briefly.

---

[100] Dictionary of Occupational Titles, Fourth Edition Revised (1991) Department of Labor. (DOT 739.687-182, DOT 017.684-010, and DOT 249.587-018).

Plaintiff argues that the ALJ failed to consider the consistency of Dr. Biggs', Dr. Morgan's, and PA-C Tate's opinions as to Plaintiff's mental impairments.  Because the Court found the ALJ failed to appropriately evaluate Dr. Biggs' opinion, his error has also affected his ability to consider the consistency of Dr. Morgan's findings and opinions to those of PA-C Tate.  To the extent that the Court has already found remand to be warranted, this issue will be addressed on remand.

**B.    Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints.  Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports.  This issue is therefore moot.

**C.    Step Five:  Plaintiff established consequential error.**

Plaintiff argues the ALJ failed to properly include all his limitations into the RFC and the hypothetical presented to the vocational expert. This argument depends on his contentions that the ALJ erred in evaluating the medical opinions as described above. As

explained above, Plaintiff met his burden in showing that the ALJ erred in analyzing the medical opinions.

## D.  Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[101] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[102]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. As noted above, on

---

[101] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[102] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

remand the ALJ is to properly consider the medical opinions, Plaintiff's alleged impairments, and Plaintiff's symptom reports.

## IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—her evaluation of the medical opinions, Plaintiff's impairments, and Plaintiff's subjective complaints.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

1     IT IS SO ORDERED. The Clerk's Office is directed to file this

2 order and provide copies to all counsel.

3     DATED this 28th day of April 2025.

4

5     _____

6     EDWARD F. SHEA
      Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23